IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Moe Maurice Gibbs, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:09-cv-101 |
| vs. | ) | |
| | ) | |
| Correctional Officer Drew and | ) | **REPORT AND RECOMMENDATION** |
| Cass County Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Moe Maurice Gibbs ("Gibbs") filed a motion to proceed *in forma pauperis* (Doc. #1) which was previously granted by the court, and a pro se complaint pursuant to 42 U.S.C. § 1983 (Doc. #4). The court dismissed the complaint as to defendants Cass County Jail and the State of North Dakota, and ordered service upon defendants Correctional Officer Drew and the Cass County Sheriff. (Doc. #13). The defendants have filed a motion for summary judgment. (Doc. #57).

**Summary of Recommendation**

Defendants are entitled to judgment as a matter of law on the merits of plaintiff's claims. Gibbs cannot show that defendants were deliberately indifferent to his serious medical needs or that Officer Drew was deliberately indifferent to Gibbs' safety when he failed to "double lock" Gibbs' handcuffs while escorting him from a visit with his attorney. Because defendants did not violate Gibb's constitutional or statutory rights, the court need not address the issue of qualified immunity.

**Claims**

Gibbs is currently incarcerated at the North Dakota State Penitentiary. His 42 U.S.C. § 1983 action seeks damages against the defendants in their individual and official capacities

based on events occurring while Gibbs was incarcerated at the Cass County Jail as a pretrial detainee. Gibbs alleges Correctional Officer Drew did not follow standard procedure by failing to "double lock" his handcuffs when he was escorted from a visit with his attorney. Gibbs claims he slipped on a freshly waxed floor and fell on his right hand, causing the handcuffs to tighten around his wrist and inflict immediate pain and swelling.

Gibbs contends the defendants acted with deliberate indifference to his medical needs by refusing to provide him with proper medical attention for 24 days. Gibbs claims he wrote numerous complaints to the medical staff at Cass County Jail and verbally complained to jail staff. He states that after he involved his attorney in the matter, a State Judge ordered that he be examined by a doctor. Upon seeing Gibbs, the doctor immediately performed surgery. Gibbs alleges he has serious and permanent damage to his hand and wrist. Gibbs seeks a total of 24 million dollars from the defendants, one million dollars for each day he was allegedly not provided with proper medical attention. (Doc. #60-6, p. 29, Transcript of Deposition of Moe Gibbs).

**Background**

The Cass County Jail contracts with Fargo Cass Public Health and the Family Health Care Center to provide medical care to inmates. (Doc. #59, p. 1, Affidavit of Heidi S. McLean, Supervisor of the Correctional Health Division at Fargo Cass Public Health). The Cass County Jail has nursing personnel on-site seven days a week for 14 hours a day. Id. Inmates can request medical attention by submitting a "Health Services Request Form." (Doc. #60-6, pp. 10-11, Transcript of Deposition of Moe Gibbs). Nursing personnel assess the situation, and if further medical care is required they consult with or refer the situation to a nurse practitioner, physician assistant, or medical doctor (hereinafter referred to as "a medical provider"). (Doc. #59, p.2).

2

According to Gibbs' medical chart, after his fall on May 14, 2007, his handcuffs were immediately removed and the area was iced. (Doc. 60-1, p. 16). An x-ray of his wrist was ordered "ASAP" and Gibbs was prescribed pain medication. Id. Gibbs admits he was taken for an x-ray within one hour of the fall. (Doc. #60-6, p. 12). The x-ray results were read by a radiologist who found the joints were intact and there was no fracture or dislocation. (Doc. #60-1, p. 21).

In the 24 days between the date of the fall and the date Gibbs saw a hand specialist, Gibbs was seen by nursing personnel numerous times. (Doc. #60-1, pp. 12-16). Gibbs' complaints and the condition of his hand and wrist were noted in his medical chart, Gibbs was advised about soft tissue injuries and the need to ice and elevate his wrist, and he was encouraged to do hand exercises to strengthen his hand. Id. Nursing personnel consulted with medical providers who assessed and followed the situation, reviewed Gibbs' x-ray, prescribed various medications, and encouraged Gibbs to do hand exercises to prevent muscular atrophy. (Doc. #60-1, pp. 12-16; Doc. #60-2, pp. 14, 16, 19-22). Nursing personnel or a medical provider promptly responded to all of Gibbs' Health Service Requests. (Doc. #60-2, pp. 10-13, 15-17, 20-21, 23-24).

On May 28, 2007, Gibbs submitted an Inmate Request Form requesting that his family doctor be allowed to examine the x-ray and his hand to get a second opinion. (Doc. #60-2, p. 18). Officer Arth responded that Gibbs had been seen several times and that the x-ray was read by a doctor who found no fracture. Id.

On May 31, 2007, nursing personnel and a medical provider reexamined Gibbs. (Doc. #60-1, p. 14). Gibbs complained of numbness in several fingers and stated that he had been elevating his hand but it was getting weaker. (Doc. #60-1, pp. 13-14). Gibbs' medical chart

3

reflects that the dorsal surface of his hand was very swollen with mild bruising and tenderness, and that there was decreased strength in Gibbs' grasp in three fingers. (Doc. #60-1, p. 13). Gibbs was advised to elevate his hand and an x-ray was ordered and taken later that same day. (Doc. #60-1, p. 13).

On June 4, 2007, a radiologist read the x-ray and found diffuse soft tissue swelling, but no fracture. (Doc. #60-1, p. 20). Nursing personnel examined Gibbs the next day and found the entire dorsum area of his hand was swollen, including his fingers. (Doc. #60-1, p. 12). There was some ruddy discoloration and application of pressure on the dorsal surface of Gibbs' hand caused pain in his wrist. Id. Nursing personnel continued Gibbs' pain medications with Ibuprofen in between doses of the prescription medication. Id. Nursing personnel discussed the case with a doctor who recommended a hand specialist. Id. An appointment was set up at MeritCare with Dr. Bailey for June 8, 2007.

On June 5, 2007, Gibbs' criminal defense attorney wrote a letter to Glen Ellingsberg at the Cass County Jail. (Doc. #60-6). The letter states that the attorney had noticed the swelling in Gibbs' hand getting worse over the past three weeks and that the attorney wanted to bring it to Mr. Ellingsberg's attention to "determine a possible remedy." Id. On June 7, 2007, Gibbs' criminal defense attorneys representing Gibbs in a separate criminal case prepared an emergency motion for immediate medical services. (Doc. #60-6, p. 69). The motion was filed on June 8, 2007, the same day Gibbs saw the hand specialist, Dr. Bailey. See State v. Gibbs, Barnes County, Case No. 02-06-K-00584; (Doc. # 60-1, p. 11).

Dr. Bailey assessed Gibbs as having developed chronic compartment syndrome in his hand. (Doc. #60-5, p. 21). Dr. Bailey consulted with Dr. Opgrande, another hand specialist, who held the same opinion. Id. Surgery was performed the same day for further evaluation.

4

(Doc. #60-5, p. 18).  There were "minimal findings" and almost everything was within "normal limits."  Id.  A hematoma was evacuated out of the dorsum of the hand, but despite the hematoma the dorsal interossceous muscles appeared to be within "normal limits."  Id.  Dr. Bailey's postoperative diagnosis was right-hand compartment syndrome and an extensive hematoma in the dorsum of the right hand.  Id.

## Summary Judgment Standard

Summary judgment is appropriate if there is not a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party failing to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex, 477 U.S. at 322.  The burden is on the moving party to establish the basis for its motion.  Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002).  If the moving party has supported its motion for summary judgment, the nonmoving party has an affirmative burden placed on it to go beyond the pleadings and show a genuine triable issue of fact.  Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992).  The court views the facts in the light most favorable to the nonmoving party, who enjoys "the benefit of all reasonable inferences to be drawn from the facts."  Vacca v. Viacom Broadcasting of Missouri, Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (citation omitted).

## Official Capacity Claims

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."  Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  "[A] local government may not be sued

under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). To state a claim against a government official in his official capacity, Gibbs must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. Id. at 690-91. Gibbs has not made any allegation that a policy or custom of Cass County was responsible for the alleged violations of his constitutional rights. It is **RECOMMENDED** that Gibbs' complaint be dismissed with prejudice as to both defendants in their official capacity.

### Deliberate Indifference to Serious Medical Needs

Convicted prisoners find protection in the Eighth Amendment against prison officials' "deliberate indifference" to their "serious medical needs" and safety. Estelle v. Gamble, 429 U.S. 97, 106 (1976). "A prison official is deliberately indifferent if she 'knows of and disregards' a serious medical need or a substantial risk to an inmate's health or safety." Nelson v. Corr. Med. Services, 583 F.3d 522, 528 (8th Cir. 2009). "The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees." Christian v. Wagner, 623 F.3d 608, 613 (8th Cir. 2010) (citation omitted).

A pretrial detainee claiming denial of medical care is required to prove both an objective and subjective element. Id. Gibbs must show his medical needs were objectively serious. Id. This "requires evidence that the medical condition was diagnosed by a physician as requiring treatment, or was so obvious that a layperson would recognize the need for a physician's attention." Id. "Under the subjective prong, [Gibbs] must show that the defendants were aware of the need but deliberately disregarded it." Id,

Gibbs cannot show the defendants violated his constitutional rights by being deliberately indifferent to his serious medical needs. Assuming Gibbs' medical needs were sufficiently serious to meet the objective element of his claim, the record demonstrates that Gibbs was under the constant supervision of nursing personnel and medical providers who promptly responded to all of Gibbs' requests and consistently evaluated Gibbs' condition. Therefore, he has failed to establish the subjective prong of his claim.

Nursing personnel and medical providers prescribed an initial course of treatment including hand exercises, pain medication, and icing and elevating the wrist. After the initial course of treatment failed to remedy the pain and swelling in Gibbs' hand, a doctor was consulted who recommended that Gibbs be seen by a hand specialist.

Gibbs' chief complaint is that he should have been seen by a doctor or hand specialist sooner. (Doc. #60-6, p. 10, Transcript of Deposition of Moe Gibbs). Gibbs fails to recognize that doctors had reviewed his x-rays and nursing personnel did consult with medical providers, i.e., a nurse practitioner, physician assistant, or medical doctor, in treating Gibbs' condition.

To state a claim based on inadequate medical treatment Gibbs "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995). Gibbs' disagreement with the course of treatment provided to him does not rise to the level of a constitutional violation. Furthermore, Gibbs does not allege the defendants named in his complaint failed to follow any directives from nursing personnel or medical providers regarding his treatment. It is **RECOMMENDED** that Gibbs' claim that defendants were deliberately indifferent to his serious medical needs be dismissed with prejudice.

**Deliberate Indifference to Safety**

A pretrial detainee claiming deliberate indifference to the detainee's safety is also required to prove both an objective and subjective element.  Davis v. Oregon Cnty., Mo., 607 F.3d 543, 548.  Gibbs must show that there was an objectively substantial risk to his safety.  Id. Under the subjective prong, Gibbs must show that "the officer had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it."  Id.  "[D]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk."  Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir.2005) (quoting Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir.1998)) (alteration in the original and internal quotation marks omitted).

Defendants contend that Gibbs abandoned his claim that Correctional Officer Drew was deliberately indifferent to Gibbs' safety by failing to "double lock" his handcuffs when escorting him from a visit with his attorney.  As defendants note, Gibbs stated in his deposition that his sole claim is that he did not get proper medical attention.  (Doc. #60-6, pp.9-10, Transcript of Deposition of Moe Gibbs).  However, later in his deposition Gibbs stated that Correctional Officer Drew is "the whole cause of the injury, from his neglect."  Id. at p. 29.  Therefore, the court construes the statements made by Gibbs as not evidencing an intent to abandon his claim that Correctional Officer Drew was deliberately indifferent to Gibbs' safety as set out in his complaint.

Gibbs cannot show that Correctional Officer Drew violated his constitutional rights by being deliberately indifferent to his safety.  At most Gibbs can prove that Officer Drew negligently failed to "double lock" his handcuffs while escorting him back from a visit with his attorney.  There is no evidence that Officer Drew knew there was a substantial risk that Gibbs

would fall which would cause the handcuffs to tighten around his wrists.  It is **RECOMMENDED** that Gibbs' claim that Officer Drew was deliberately indifferent to his safety be dismissed with prejudice.

## Qualified Immunity

Since the court has found no constitutional or statutory violation by defendants, the court need not address defendants' alternative ground for summary judgment:  that they are entitled to qualified immunity from liability.

## Additional Claims Raised in Response

Defendants submitted the affidavit of Carlos Perez (Doc. #22) and Heidi S. McLean (Doc. #59) in support of their motion for summary judgment.  Gibbs contends that because he is incarcerated he was unable to depose the witnesses and therefore should have an opportunity to cross-examine them at trial.  Gibbs has not previously taken issue with the court's scheduling order (Doc. # 28) and has not shown why he could not, despite his incarceration, depose the witnesses by written questions under Federal Rule of Civil Procedure Rule 31.  Gibbs was provided with the names and addresses of the witnesses in defendants' initial disclosures.  (Doc. #40-1).  Gibbs has not stated what facts he would seek to develop through deposition or cross-examination of Perez or McLean.  Furthermore, Gibbs admitted in his response that he was seen by medical personnel when he complained of pain, swelling, and discomfort.  (Doc. #62).  Gibbs has not shown that examining the witnesses would demonstrate a genuine triable issue of fact, or even inferred that one exists which would prevent the entry of summary judgment in defendants' favor.

Gibbs states in his response that Judge Paulson ordered that the Cass County Correctional Officers set up an appointment for Gibbs to be seen by a hand specialist before his attorneys

filed the emergency motion for immediate medical services on June 8, 2007. Even if this is true, it does not negate the fact that the medical records show that nursing personnel and medical providers at Cass County Jail were actively treating and following Gibbs' condition, and that an appointment was set up with a hand specialist on the recommendation of a doctor who consulted with Cass County Jail nursing personnel. (Doc. #60-1, p. 12). Judge Paulson's order, if it exists, does not reflect that defendant's were deliberately indifferent to Gibbs' serious medical needs in light of the record as a whole.

## Conclusion

Gibbs cannot show that defendants were deliberately indifferent to his serious medical needs or that Officer Drew was deliberately indifferent to Gibbs' safety when he failed to "double lock" Gibbs' handcuffs while escorting him from a visit with his attorney. Accordingly, it is **RECOMMENDED**:

1. Defendants' motion for summary judgment (Doc. # 57) be **GRANTED**; and
2. Gibbs' complaint (Doc. #4) be **DISMISSED** with prejudice.

Dated this 14th day of April, 2011.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than May 2, 2011, a pleading

specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection.  Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.